UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON JON CONWAY APPLEGATE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:18-cv-00581 JAM CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the undersigned recommends that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1966, applied on November 4, 2013 for SSI and disability insurance benefits, alleging disability beginning August 29, 2013. Administrative Transcript ("AT") 18, 28. Plaintiff alleged he was unable to work due to depression, schizophrenia, hearing voices, back injury, and right knee injury. AT 93. In a decision dated September 21, 2016, the ALJ

////

determined that plaintiff was not disabled.[1] AT 18-30. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since August 29, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: thoracic spine compression fracture; bilateral sacral joint degenerative changes; meniscal tear of the right knee, status post arthroscopy and meniscectomy; history of lumbar fusion surgery; depression; and a pain disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except he can occasionally climb, kneel, crouch, and crawl; can frequently balance and stoop; must avoid concentrated exposure to hazards such as dangerous machinery, unprotected heights, and uneven surfaces; and can perform simple tasks in a setting with few workplace changes and no more than occasional interaction with the general public and coworkers.

6. The claimant is unable to perform any past relevant work.[2]

7. The claimant was born on XX/XX/1966 and was 47 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2013 through the date of this decision.

AT 20-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly rejected the treating doctor's opinion; (2) the ALJ improperly rejected plaintiff's testimony; and (3) the ALJ's step five finding is not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

---

[2] "The claimant's past relevant work was as a truck driver, an order clerk, a stock clerk, and a caretaker." AT 28.

3

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Medical Opinions

Plaintiff asserts that the ALJ improperly weighed the opinions of his treating doctor, Dr. Jane Wang.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

////

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Wang examined plaintiff multiple times in 2014, after the alleged disability onset date of August 29, 2013. In addition to her treatment notes, Dr. Wang wrote a Treating Physician's Final Report in December 2014 regarding plaintiff's medical history and the condition of his lower back and right knee. AT 1476-1485. She opined that plaintiff's condition was permanent and stationary with regard to his low back. AT 1483. She further reported that plaintiff's permanent work-related conditions included no repetitive lifting over 15 pounds, with limited bending, stooping, crouching, squatting, twisting, pushing, pulling, and no crawling. AT 1484.

Evaluating the medical opinions in the record, the ALJ gave "great weight" to the opinions of State agency consulting physicians Dr. Jone and Dr. Amon, who reviewed plaintiff's records in 2014 and opined that he was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking about 6 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; and other exertional limitations. AT 26; see AT 101-103, 119-120. The ALJ credited these opinions "because they are well supported by the record as a

whole as discussed above, the improving findings on physical examinations since October 2013, and the mild objective findings on imaging studies since October 2013." AT 26; see AT 24-26.

The ALJ also largely credited the opinion of examining physician Dr. William Ramsey, who reviewed plaintiff's medical records in September 2015 and opined that plaintiff had no restrictions on routine ambulation but did have certain exertional limitations. AT 26-27, citing AT 1531-1541. "To the extent that it is consistent with this decision, I give Dr. Ramsey's opinion great weight, but find that the claimant is more limited in his ability to lift and carry, push and pull based upon the record as a whole, and the longitudinal history of severe lumbar and right knee pain," the ALJ stated. AT 27.

The ALJ next discussed Dr. Wang's opinions as follows:

> In contrast, in May 2014, Jane Wang, M.D., who had treated the claimant for 2 months at that time, opined that the claimant should not lift over 5 pounds, is limited in bending, stooping, crouching, squatting, twisting, pushing and pulling, and should alternate sitting and standing at work.[3] Subsequently, in June 2014, she opined that the claimant <u>should not perform repetitive lifting over 10 pounds</u>, is limited in bending, stooping, crouching, squatting, twisting, pushing and pulling, and no crawling.[4] In July and August 2014, Dr. Wang opined that lifting was limited to 10 pounds, and that he continued to be limited in bending, stooping, crouching, squatting, twisting, pushing, pulling, climbing and crawling.[5] Thereafter, in December 2014, Dr. Wang opined that the claimant had reached maximum medical improvement, and that he had the <u>permanent work restrictions of no repetitive lifting over 15 pounds</u>, limiting bending, stooping, crouching, squatting, twisting, pushing and pulling, and no crawling.[6]
>
> My RFC finding is not entirely inconsistent with Dr. Wang's opinions since June 2014. The undersigned finds that the claimant is capable of occasionally lifting and carrying 20 pounds and frequently 10 pounds, and that the claimant is limited in his postural activities as indicated above. Dr. Wang precluded the claimant from 'repetitive lifting over 10 pounds,' which is not the same as frequent. Nonetheless, I give Dr. Wang's opinions since June 2014 less weight than the opinions of the DDS medical consultants and Dr Ramsey

---

[3] AT 761-764.

[4] AT 754-758.

[5] AT 785-789, 792-796.

[6] AT 1484.

6

> based upon the mild objective findings on physical examinations, including the findings of negative straight leg raising tests, a full range of motion of the right knee, and normal motor sensation and strength, since March 2014, and based upon the mild objective findings on imaging studies of the lumbar spine and right knee. Further, I give no weight to Dr. Wang's opinion from May 2014 because the objective findings do not support the level of limitations opined by her at that time, and based upon Dr. Wang's own assessment that [he had] not yet reached maximal[] medical improvement.

AT 27 (emphasis added).

Plaintiff argues that the ALJ should have credited Dr. Wang's opined limitation of "no repetitive lifting over 15 pounds" and that the ALJ's rejection of this limitation was not supported by specific and legitimate reasons. As the ALJ pointed out, however, the RFC was not entirely inconsistent with Dr. Wang's opinions. An RFC for light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). With an RFC for light work, therefore, plaintiff could "frequently"[7] lift up to 10 pounds, while per Dr. Wang, he could not "repetitively" lift more than 15 pounds. The RFC for light work also contemplates lifting up to 20 pounds occasionally (see AT 27), which plaintiff contends amounts to "repetitive" lifting of more than 15 pounds.

To the extent the RFC may permit more lifting than contemplated by Dr. Wang's opinion, the ALJ resolved the ambiguity by relying on other medical opinions. In support, the ALJ cited plaintiff's mild objective findings on physical examinations, including normal motor sensation and strength. See AT 24 (citing exam findings of no motor weakness and normal sensation in the bilateral upper and lower extremities, and good range of motion of the right knee), AT 25 (citing exam findings of normal motor strength and sensation). The ALJ also cited 2014 exam findings that plaintiff moved normally, sat comfortably, and was able to stand with ease from sitting. AT 24; see, e.g., AT 553, 594. "Moreover, the imaging studies since October 2013 also documented only mild objective findings," the ALJ noted. AT 25; see, e.g., AT 790-791, 1205-1206, 1351. The undersigned concludes that the ALJ provided specific and legitimate reasons for not fully

---

[7] In the context of light work, "frequent" means occurring from one-third to two-thirds of the time. SSR 83-10.

7

adopting Dr. Wang's opined lifting restrictions.

As to other postural limitations opined by Dr. Wang, to the extent these conflict with the RFC's postural limitations, plaintiff has not shown that the record supports exertional limitations greater than reflected in the RFC.  In multiple 2014 treatment notes, Dr. Wang stated that plaintiff could perform "limited" postural activities, not necessarily inconsistent with an RFC for "occasional" climbing, kneeling, crouching, and crawling and "frequent" balancing and stooping.  AT 758, 789, 795, 1484.  As with the lifting limitation, above, the ALJ resolved any ambiguities in favor of Dr. Ramsey and the consulting physicians, though he concluded that plaintiff was "more limited in his ability to lift and carry, push and pull" than Dr. Ramsey opined, citing the overall record and plaintiff's history of lumbar and knee pain.  AT 27.  The ALJ's weighing of the medical opinions is supported by record evidence, and the court finds no error on this basis.

B.  Credibility

Plaintiff next asserts that the ALJ improperly discounted his subjective symptoms.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

8

01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ summarized plaintiff's hearing testimony as follows:

> At the hearing, the claimant testified that he is unable to work due to horrible pain in his right knee and mid-back. He testified that his right knee is usually at a 6 or 7 on a pain scale of 1 to 10, with 10 being the worst. He is not taking any prescription pain medications, but just Tylenol or Ibuprofen because he has no insurance, and cannot afford it. The claimant testified that he can only sit for 1 hour and then gets stiff and has sharp pains, stand for 20 minutes and walk for about half a mile due to knee and back pain, can lift 10 to 15 pounds only, can reach and stoop only occasionally, and can never kneel. The claimant has been using a cane to ambulate because he was losing balance and his right knee was in pain. He is able to walk short distances like from the hearing building to the parking lot, but needs to use the cane for long distances.

AT 23; see AT 43-79 (hearing transcript).

The ALJ found that "[t]he medical records partially support the claimant's allegations, but do not support the level of limitations alleged by him." AT 24. The ALJ first considered the objective medical evidence, beginning in June 2013 when plaintiff sustained a work injury and reported right knee and back pain. AT 24. After detailing the imaging studies and treatment from this period, the ALJ noted that, in October 2013, plaintiff underwent right knee arthroscopy and, subsequently, had physical therapy until February 2014. AT 24. At that time, plaintiff "elected to discontinue [physical therapy] prior to attaining the agreed upon goals and treatment plan of care," the ALJ noted. AT 24; see AT 539-540, 587, 589, 592.

9

The ALJ summarized objective evidence showing that, after February 2014, "the severity of his [physical] impairments improved." AT 24-25. Plaintiff does not take issue with the objective evidence cited by the ALJ during this period, including examination findings of negative straight leg raising tests, no motor weakness, normal sensation in the bilateral upper and lower extremities, and good range of motion in the right knee. AT 24-25. "The claimant also stated he was walking better by late April 2014, and he had a good range of motion of the right knee," the ALJ noted. AT 25. "In sum, the medical records show that the claimant's condition steadily improved since his right knee surgery in October 2013 as shown by his physical examinations and reports by his examining and treating physicians," the ALJ concluded. AT 25.

As to plaintiff's pain disorder, found to be a severe impairment (AT 21), the ALJ noted plaintiff's testimony that he was taking over-the-counter medications for pain and had not been prescribed pain medication for over a year. AT 56-57; see AT 525-526, 530, 533 (painkillers prescribed after knee surgery). Plaintiff testified that used a cane for his right knee based on his own decision, not because a doctor had prescribed or recommended it. AT 68-69. The ALJ summarized March and April 2014 medical notes stating that plaintiff "was walking better with no cane although he still had an antalgic gait . . . moved normally and sat comfortably, and was able to stand with ease from sitting." AT 24. By March 2014, plaintiff was reporting that he would "walk 4 hours to get away on his own"; and later that year exhibited "no tenderness to palpation over the medial joint line, no crepitus, and normal motor strength of the knees." AT 26. The ALJ also cited plaintiff's statement to consultative evaluator Dr. Wendy McCray in April 2014 "that he did not have functional limitations and . . . is independent in completing all activities of self-care." AT 21; see AT 546.

As to alleged mental impairments, the ALJ found plaintiff's allegations of disabling depression "only partially supported by the medical records." AT 25. At the hearing, plaintiff "testified that he used to have a cheerful personality, but that now he is depressed. He now forgets things easily, has difficulty concentrating, and is not always able to stay on task," the ALJ noted. AT 23; see AT 43-79. Turning to the objective medical evidence, the ALJ noted that, while plaintiff was diagnosed with major depressive disorder and psychosis in September 2013,

"the medical records do not contain any evidence that the claimant sought further mental health treatment" after October 2013. AT 25. "The only other evidence of mental health treatment is from March 2014 when the claimant was treated at the emergency room of Kaiser after overdosing on Ativan," but plaintiff was not found to be suicidal and was treated and sent home. AT 26. In April 2014, plaintiff underwent a psychiatric consultative evaluation and was diagnosed with a depressive disorder and cannabis use disorder, but there were "no other record of treatment of any kind for the claimant's depression," the ALJ noted. AT 27. Plaintiff does not dispute this summary of the evidence concerning mental health.

"While these medical records support a finding of 'severe' depression, the dearth of mental health treatment since March 2014 and the observations by the claimant's treatment providers and [the consultative examiner] on mental status examinations do not support a finding that the claimant's depression is disabling," the ALJ concluded. AT 26; see AT 27-28 (summarizing medical opinions as to mental health).

Plaintiff asserts that the ALJ failed to provide sufficient reasons for discounting his subjective symptoms, citing Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ's failure "to identify the testimony she found not credible" and "link that testimony to particular parts of the record supporting her non-credibility determination" was legal error). See also Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1102-1103 (9th Cir. 2014) (ALJ's failure to "specifically identify the testimony" he found not credible was error; boilerplate statement that symptoms were not credible to the extent they were inconsistent with the RFC was insufficient). Here, however, the ALJ sufficiently explained why the objective record of physical and mental impairment, evidence of post-surgical improvement (including as to pain), and the lack of significant treatment for depression undercut plaintiff's subjective testimony of disabling symptoms.

C. Available Jobs

Lastly, plaintiff argues that the ALJ's step five finding of available jobs was not supported by substantial evidence.

"At Step Five . . . , the Commissioner bears the burden of proving that the claimant can

11

perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. § 416.920(f). There are two ways for the Commissioner to meet this burden: (1) by the testimony of a vocational expert or (2) by reference to the grids." Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001) (internal citations omitted). In this case, the Commissioner employed the testimony of a vocational expert. While the ALJ may pose to the expert a range of hypothetical questions to a vocational expert, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ relied on vocational expert testimony that a person with plaintiff's RFC could perform the requirements of representative occupations such as inspector of electrical equipment (Dictionary of Occupational Titles (DOT) 727.687.062), x-ray inspector (DOT 529.685-274), and bottling line attendant (DOT 920.687-042). AT 29. The first two jobs are defined in the DOT as having a Reasoning Level of 2.[8] Plaintiff argues that these jobs are inconsistent with plaintiff's RFC for "simple tasks in a setting with few workplace changes."

However, the third identified job, bottling line attendant, has a Reasoning Level of 1. The vocational expert testified that there were 45,000 such jobs available in California and more than 300,000 such jobs in the United States. AT 29, 86. Because at least one viable job existed in sufficient numbers, any error as to the reasoning levels of the other two jobs was harmless. See 20 C.F.R. § 404.1566(b) (providing that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet") (emphasis added). See also Thomas v. Comm'r, 480 F3d. Appx. 462, 464 (9th Cir. 2012) (affirming ALJ even though claimant could not perform two identified jobs because she

---

[8] There are six GED Reasoning Levels ranging from Level One (the simplest) to Level Six (the most complex). At Level One, an individual can "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App. C, § III (emphasis added). At Level Two, an individual can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

could perform the remaining job of housekeeper, which existed in significant numbers in the national economy).

Plaintiff next argues that the ALJ's hypothetical questions to the VE did not include all of plaintiff's limitations, as set forth in the foregoing claims.  Because the undersigned has considered these claims and found them without merit, plaintiff has not shown that the RFC used in the ALJ"s questions to the VE was unsupported by substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 20, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/applegate0581.ssi.ckd_f&rs

13